# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE L. WARNER COMPANIES, INC., et al., Plaintiffs, | * * | |
| v. | * | Civil No. CCB-18-1585 |
| BORN TO PLAY AGENCY, EIRL, et al., Defendants. | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned to review plaintiffs' Motion for Default Judgment and to make recommendations concerning damages, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302. (ECF No. 17.) Currently pending is plaintiffs' Motion for Default Judgment ("Motion") (ECF No. 12). Plaintiffs have also submitted a Supplemental Brief in Support of Plaintiffs' Motion for Entry of Default Judgment ("Supplemental Brief") (ECF No. 19) and an Additional Supplemental Brief in Support of Plaintiffs' Motion for a Default Judgment ("Second Supplemental Brief") (ECF No. 23). Defendants have not filed any response. No hearing is necessary. See Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons discussed below, I respectfully recommend that plaintiffs' Motion (ECF No. 12) be GRANTED in part and DENIED in part and that relief be awarded as set forth herein.

## I. PROCEDURAL BACKGROUND

Plaintiffs The L. Warner Companies, Inc. ("TWC") and TWC Baseball Holdings, LLC ("TWCBH") (collectively, "plaintiffs") filed their Complaint against defendants Born to Play Agency, EIRL ("Born to Play") and Edgar Robinson Mercedes ("Mercedes") (collectively,

"defendants") on June 1, 2018. (ECF No. 1). Defendants were served with process on July 16, 2018. (ECF No. 7). Neither defendant has responded to the Complaint. Accordingly, the Clerk of Court entered an Order of Default against defendants on September 11, 2018. (ECF No. 11).

Plaintiffs filed the pending Motion on October 4, 2018. (ECF No. 12). On December 19, 2018, I requested further information about the applicable law and damages from plaintiffs. (ECF No. 18). Plaintiffs filed a Supplemental Brief in support of their Motion on January 25, 2019. (ECF No. 19). On March 20, 2019, I asked plaintiffs to submit a statement of fees and costs along with an affidavit from counsel in support of their request for attorneys' fees and evidence in support of their request for prejudgment interest. (ECF No. 22). Plaintiffs filed a Second Supplemental Brief in support of their Motion on April 4, 2019. (ECF No. 23).

## II. PLAINTIFF'S FACTUAL ALLEGATIONS

A common set of facts supports each of the causes of action set forth in plaintiff's Complaint. (ECF No. 1.) By virtue of the clerk's entry of default, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780–81 (4th Cir. 2001).

TWC is a full service financial benefit and sports management consulting firm. (ECF No. 1 at ¶ 12). TWCBH is a sister company of TWC that provides sports management and entertainment consulting and advisory services. (Id. at ¶ 13). Both plaintiffs are owned by Lee W. Warner ("Warner"), who also serves as CEO and Chairman of both companies. (Id. at ¶ 14). In the fall of 2013, Warner met defendant Mercedes, the principal and owner of Born to Play, a baseball training club ("Club") located in the Dominican Republic that develops athletes ("Club Athletes") and places Club Athletes with Major League Baseball ("MLB") teams. (Id. at ¶¶ 15–17). In April of 2014, Mercedes offered Warner an opportunity to gain access to his Club

Athletes in exchange for a $100,000 loan collateralized by Mercedes' future earnings and personally guaranteed by Mercedes. (Id. at ¶ 18).

On June 18, 2014, TWCBH entered into a Consulting Agreement with defendants and agreed to advance $100,000 to defendants in the form of a loan to cover Club expenses. (Id. at ¶¶ 19–20). In exchange, defendants granted a right of first refusal to TWCBH to be "the exclusive worldwide professional and marketing agency for Club Athletes, including but not limited to for Major League Baseball." (Id. at ¶ 21). Defendants also agreed that they would not "sell, transfer, assign or otherwise utilize the Player Rights/Club Athletes without the prior written consent of TWCBH." (Id. at ¶ 23). TWCBH would also receive compensation for each player that signed with Born to Play during the term of the agreement or twenty-four months after the expiration of the term. (Id. at ¶ 25). TWCBH would receive accrued commissions on a monthly basis "as long as commissions are earned." (Id.) Finally, defendants agreed that, during the term of the Consulting Agreement and for one year following the termination or expiration of the agreement, they would not interfere with any client of TWCBH arising from the parties' relationship under the Consulting Agreement. (Id. at ¶ 26). On June 18, 2014, TWC entered into an ancillary Referral Fee Agreement with Born to Play that set forth the percentage allocation between the parties for all fees received directly from Club Athletes. (ECF No. 12-2 at 6).

On June 20, 2014, plaintiffs wired $100,000 to a bank account in the Dominican Republic beneficially owned by Mercedes. (ECF No. 1 at ¶ 28). From late 2014 until the summer of 2016, Mercedes represented to Warner that neither Mercedes nor Born to Play received sufficient funds to repay the loan or accrued commissions. (Id. at ¶ 29). In mid-2015, Mercedes informed Warner that he was expecting a large payment from a player, Yuniel

3

Ramirez Arrieta ("Arrieta"), who had been signed to the Miami Marlins. (Id. at ¶ 32). Mercedes later informed Warner that Arrieta had only received half of his expected signing bonus. (Id.) Warner relied on Mercedes' representations that defendants would fulfill their obligations, but that they required more time to secure funds, and, on May 5, 2015, TWCBH renewed the Consulting Agreement. (Id. at ¶ 33). TWCBH renewed the Agreement again on May 5, 2016. (Id. at ¶ 35).

Plaintiffs later learned that, contrary to Mercedes' representations, Mercedes was personally involved in signing multiple Club Athletes to MLB teams, including Yoenis Cespedes in a trade to the New York Mets, Arrieta to the Miami Marlins, Luis Roberto Moirán to the Chicago White Sox, Hector Mendoza to the St. Louis Cardinals, Elian Rodriguez, and Jose Betances. (Id. at ¶ 36). Defendants did not obtain plaintiffs consent for any of these actions. (Id. at ¶ 38). TWCBH did not receive any commissions from defendants or repayment of the loan. (Id. at ¶¶ 25, 40).

### III.     LEGAL STANDARD FOR ENTRY OF DEFAULT JUDGMENT

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. Ryan v. Homecomings Fin. Network, 253 F. 3d 778, 780–81 (4th Cir. 2001). It remains for the court, however, to determine whether these unchallenged factual allegations constitute a legitimate cause of action. Id. If the court determines that liability is established, the court must then determine the appropriate amount of damages. Id. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. See, e.g., Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co., 919 F. Supp. 2d 680, 684 (D. Md. 2013) (citing S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

"While the court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum." Id. (citing Monge v. Portofino Ristorante, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010) (collecting cases); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010)).

### A. **Defendants' Liability**

In their Complaint, plaintiffs set forth seven causes of action against defendants: (1) common law fraud/fraud in the inducement; (2) breach of contract; (3) intentional breach of the implied covenant of good faith and fair dealing; (4) repayment of the loan; (5) unjust enrichment; (6) tortious interference with prospective business relationships; and (7) accounting. (ECF No. 1 at 10–17). Plaintiffs now seek $100,000 in compensatory damages and $100,000 in liquidated damages, along with interest, costs and attorneys' fees on their breach of contract claim. (ECF No. 19 at 4). Alternatively, plaintiffs ask for $100,000 in compensatory damages and $300,000 in punitive damages for their fraud claim. (Id.)

In their Motion, plaintiffs cited to Maryland state law in support of their fraud, breach of contract, and unjust enrichment claims. (ECF No. 12-2 at 9–13). Section 8 of the Consulting Agreement, entitled "Governing Law," states, however, that "This Agreement shall be construed and enforced in accordance with the laws of the Dominican Republic, without regard to the conflict of laws or choice of law provisions."[1] (ECF No. 1-2 at 4). Accordingly, I asked plaintiffs to provide relevant case law in support of their claims from the Dominican Republic and, if plaintiffs maintained that Maryland law governed the case, to provide case law in support

---

[1] While the second contract, the "Referral Fee Agreement," states that "[t]his Agreement, and all claims, disputes and proceedings in connection herewith, shall be governed and construed in accordance with the laws of the State of Maryland, USA, without regard to principles of conflicts of laws," (ECF No. 1-2 at 8), the claims brought by plaintiffs derive from breaches of the Consulting Agreement. (ECF No. 12-2 at 8–9).

5

of that position. (ECF No. 18 at 1). In their Supplemental Brief, plaintiffs provided authority from the Dominican Republic in support of their breach of contract claim and did not dispute that the laws of the Dominican Republic govern the case. (ECF No. 19 at 4–5). Alternatively, plaintiffs asked for damages for fraud in the inducement, and provided Maryland authority to support their claim, but did not provide any argument or authority as to why Maryland law should govern instead of the laws of the Dominican Republic. (ECF No. 19 at 6–8).

In support of their request for damages on their breach of contract claim, plaintiffs have provided the court with an affidavit from Oliver Peña Veras, an attorney admitted to practice law before the courts of the Dominican Republic, with over fifteen years of experience practicing commercial litigation in the Dominican Republic. (ECF No. 19-1 at 10). Mr. Veras stated that the "Dominican Republic is a civil law jurisdiction and therefore, legal practitioners and judges rely on statutory provisions such as rules and regulations, as opposed to case law for purposes of substantiating the legal basis of their arguments and form [sic] their decisions." (ECF No. 19-1 at 11). Mr. Veras further stated that "[u]nder the laws of the Dominican Republic, an agreement is considered to be the law between the parties. Consequently, the provisions of the agreement must be enforced by the courts unless there is proof that the agreement was amended by the mutual consent of the parties." (ECF No. 19-1 at 12 (citing Dominican Civil Code Article 1134) ("The conveyances legally formed have legal force for the parties that have entered into them."))

The Consulting Agreement was executed between TWCBH[2] and Born to Play, duly represented by Mercedes as guarantor. (ECF No. 1-2 at 1). Here, because there is no evidence that the Consulting Agreement was amended by the mutual consent of the parties, the Consulting

---

[2] While plaintiff TWC is also named as a party to this suit, plaintiff TWC was not a party to the Consulting Agreement. Because plaintiffs only seek entry of default judgment against defendants for violations of the Consulting Agreement, plaintiff TWC is not entitled to the relief sought in the Motion. Accordingly, the Motion is denied as to plaintiff TWC.

Agreement is considered to be the law between the parties under the laws of the Dominican Republic. (See ECF No. 19-1 at 12). Sections 3.2 and 3.2.1 of the Consulting Agreement state that, "[t]o cover the expenses Club incurs with respect to developing Club Athletes, the Club shall receive the following expense payment loans: [a] loan of USD $100,000.00 by June 23, 2014 ("Loan"). This Loan granted by TWCBH in favor of the Club will be paid back out of any revenue received by Club, understanding it is a priority liability over any other expenses of the Club. This Loan must be fully paid back no later than December 31, 2014 unless extended in written [sic] at the sole and absolute discretion of TWCBH." (ECF No. 1-2 at 2). TWCBH agreed to extend the December 2014 deadline to June of 2015. (ECF No. 19 at 5). To date, however, defendants have not repaid the loan. Id. Accordingly, defendants have breached Sections 3.2 and 3.2.1 of the Consulting Agreement.

Additionally, Section 3.4 states that "Club represents and warrants that it owns, controls, and will continue to own and control, all the rights over the players and other similar rights of each Club Athlete through formal, legally binding contracts executed between Club and each Club Athlete (existing and future), including the right to transfer, assign, or otherwise sell each of the Club Athlete [sic] on a worldwide basis (the "Player Rights"). Club agrees that it shall not transfer, assign, or otherwise utilize the Player Rights and/or Club Athletes without the prior written consent of TWCBH." (ECF No. 1-2 at 3). TWCBH has alleged, however, that defendants signed several Club Athletes to MLB teams without obtaining TWCBH's prior written consent. (ECF No. 1 at ¶ 36). Accordingly, defendants have breached Section 3.4 of the Consulting Agreement.

As noted above, the Consulting Agreement was executed between plaintiff TWCBH and defendant Born to Play, represented by Mercedes as guarantor. (ECF No. 1-2 at 1). Mr. Veras

stated in his affidavit that, under the laws of the Dominican Republic, Mercedes is personally liable for TWCBH's damages and judgment must be entered against both Born to Play and Mercedes. (ECF No. 19-1 at 12–13 (citing Dominican Civil Code Article 2011) ("A natural person extending a guarantee for an obligation is liable to the creditor for compliance, if the debtor breaches its obligations.")) Accordingly, TWCBH has sufficiently stated a cause of action against both defendants on its breach of contract claim, and entry of default judgment on this claim is proper.

While TWCBH alternatively asked for entry of default judgment on their fraud claim, I need not address this request, as I am recommending that the court grant the primary relief sought by TWCBH. Further, TWCBH has not offered any Dominican Republic authority to support its fraud claim or any authority to support the use of Maryland law for this claim. Accordingly, entry of default judgment on TWCBH's fraud claim is not proper.

### B. Damages

As TWCBH has proven defendants' liability on its breach of contract claim, the undersigned now undertakes an independent determination of the damages to which TWCBH is entitled. TWCBH seeks $100,000 in compensatory damages and $100,000 in liquidated damages along with interest, costs, and attorneys' fees for defendants' breach of the Consulting Agreement. (ECF No. 19 at 4).

In his affidavit, Mr. Veras stated that "according to the laws of the Dominican Republic and the provisions of the Consulting Agreement, a party seeking reimbursement of money disbursed as a loan has the right to receive repayment of the loan as compensatory damages." (ECF No. 19-1 at 11 (citing ECF No. 1-2 at 2, Dominican Civil Code Article 1134)). Here, Sections 3.2 and 3.2.1 of the Consulting Agreement clearly provided for the repayment of the

8

$100,000 loan by defendants by December 31, 2014. (ECF No. 1-2 at 2). While this deadline was temporarily extended to June of 2015, defendants still have not repaid the loan. (ECF No. 19 at 5). Accordingly, I recommend that the court award TWCBH $100,000 as compensatory damages for defendants' breach of Section 3.2.1 of Consulting Agreement.

Mr. Veras also stated that, under the laws of the Dominican Republic, in addition to repayment of the loan, a party seeking reimbursement of money disbursed as a loan has the right to "accrued interest at the discretion of the [c]ourt." (ECF No. 19-1 at 11 (citing ECF No. 1-2 at 2, Dominican Civil Code Article 1134)). Here, plaintiffs requested that the court award "interest running from the date repayment is due at the discretion of the court." (ECF No. 19 at 5). After plaintiffs filed their Supplemental Brief, I asked plaintiffs to "submit a specific request for interest along with evidence in support of this request." (ECF No. 22 at 1). In response, plaintiffs asked for "payment of 6% prejudgment interest on the amount of $100,000, beginning, at the latest, on September 1, 2016, in the total accrued amount of $15,534.25 through April 4, 2019 plus per diem interest of $16.4384 per day thereafter to the date of entry of judgment." (ECF No. 23 at 3).

In support of this request, plaintiffs cited to two cases, <u>Reisterstown Plaza Associates v. General Nutrition Center, Inc.</u>, 89 Md. App. 232 (Md. Ct. Spec. App. 1991), and <u>Buxton v. Buxton</u>, 363 Md. 634 (Md. 2001), but each of these cases discussed whether an award of prejudgment interest was appropriate under Maryland law.[3] "[P]rejudgment interest is a matter of state substantive law." <u>Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc.</u>, 40 F. App'x 767, 769

---

[3] In <u>Reistertown Plaza Associates</u>, the Court of Special Appeals of Maryland held that the trial judge erred by awarding a ten percent prejudgment interest rate and found that "the only allowable rate for prejudgment interest is six percent per annum, in accordance with Art. III § 57 of the Maryland Constitution." 89 Md. App. 232 at 249. In <u>Buxton v. Buxton</u>, the Court of Appeals of Maryland held that an award of prejudgment interest was inappropriate but discussed other cases in which courts awarded prejudgment interest at a rate of six percent. 363 Md. 634 at 653–58.

9

(4th Cir. 2002) (citing Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 633 (4th Cir. 1999)). As noted above, plaintiffs do not dispute that the substantive law of the Dominican Republic governs the contract, so the laws of the Dominican Republic also govern the award of prejudgment interest. See id. at 769–70 (holding that South Carolina law governed the award of prejudgment interest when the parties agreed that the substantive law of South Carolina applied). While TWCBH has provided evidence that the laws of the Dominican Republic allow an award of prejudgment interest, it has provided no authority in support of its specific request for prejudgment interest at a rate of six percent. Accordingly, I recommend that the court deny TWCBH's request for $15,534.25 in prejudgment interest at the rate of six percent per annum.

Section 3.5 of the Consulting Agreement also includes a liquidated damages provision that states that, "if Club breaches Section 3.4 above or otherwise fails to exclusively control the Player Rights of any Club Athlete at any time during the term, TWCBH shall be entitled to liquidated damages in the amount of USD $100,000 in addition to any other remedies TWCBH may have, which shall be payable by Club to TWCBH within seven (7) days of demand by TWCBH." (ECF No. 1-2 at 2). Section 3.6 provides that "TWCBH shall only be entitled to receive the liquidated damages set forth in Article 3.5, during such time as any part of the principle of the US $100,000.00 loan, as set forth in section 3.2.1, remains outstanding." (ECF No. 1-2 at 2–3). Here, TWCBH's allegations support that defendants breached Section 3.4 by signing several Club Athletes to MLB teams without obtaining TWCBH's prior written consent. (ECF No. 1 at ¶ 36). TWCBH has also established that the entire principle of the loan remains outstanding. (ECF No. 19 at 5). Mr. Veras stated in his affidavit that "[u]nder the laws of the Dominican Republic, an agreement is considered to be the law between the parties," (ECF No. 19-1 at 12 (citing Dominican Civil Code Article 1134)), and that "[d]efendants are liable under

the laws of the Dominican Republic to pay [p]laintiffs liquidated damages in the amount of $100,000.00." (Id.) Accordingly, I recommend that the court award TWCBH $100,000 in liquidated damages under the Consulting Agreement for defendants' breach of Section 3.4 of the Agreement.

Finally, TWCBH asks for costs and attorneys' fees for defendants' breach of the Consulting Agreement. (ECF No. 19 at 4). Section 4.5 of the Consulting Agreement states that "Club hereby agrees to protect, defend and indemnify TWCBH and its respective affiliates,, officers, directors, shareholders, members, agents and employees harmless from and against any and all claims, demands, <u>losses or expenses, of any nature whatsoever, including reasonable attorneys' fees, arising directly or indirectly from or out of any breach by Club of its obligations or representations hereunder</u>, or Club' violation of third party rights, or any negligence or willful misconduct on the part of Club relating to this Agreement or the performance of its obligations hereunder." (ECF No. 1-2 at 3(emphasis added)). In his affidavit, Mr. Veras stated that "[u]nder the laws of the Dominican Republic, when the parties' agreement provides for payment of attorneys' fees, such fees are warranted and should be awarded." (ECF No. 19-1 at 12 (citing Dominican Civil Code Article 1134)). Accordingly, under Section 4.5 of the Consulting Agreement, TWCBH is entitled to reasonable attorneys' fees and costs arising from defendants' breach of the Consulting Agreement.

In order to properly determine an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" by multiplying the number of hours reasonably expended times a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 888 (1984); Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008). The party requesting an award of attorneys' fees must demonstrate that "the number of hours for which [it] seeks reimbursement is reasonable and does

not include hours that are excessive, redundant, or otherwise unnecessary." Victor Stanley, Inc. v. Creative Pipe, Inc., Civil No. MJG-06-2662, 2011 WL 2552472, at *3 (D. Md. Jan. 24, 2011) (internal quotation marks omitted). Here, in accordance with Local Rule 109.2 and Appendix B to the Local Rules, TWCBH submitted a declaration of Francelina M. Perdomo, Esq., in support of its request for attorneys' fees and costs ("Declaration") (ECF No. 23-1) as well as an itemization of legal fees and costs incurred (ECF Nos. 23-2–23-5).

According to the Declaration, four individuals, including Ms. Perdomo, have worked on this case. (ECF No. 23-1 at ¶¶ 2, 15). Ms. Perdomo, a partner at Chinta Perdomo Berks & Fratangelo, LLC, was admitted to practice law in the Dominican Republic in 1999 and admitted to the New York bar in 2005 and charged an hourly rate of $400 in this case.[4] (Id. at ¶¶ 3, 20). Martin H. Freeman, a partner at Freeman & Freeman, P.C., served as local counsel. (Id. at ¶ 14). Mr. Freeman was admitted to the Maryland bar in 1965 and charged an hourly rate of $325 in this case. (Id. at ¶¶ 14–15). Ms. Perdomo and Mr. Freeman's rates "are presumptively reasonable as they are within the ranges set by the Local Rules."[5] Ledo Pizza Sys., Inc. v. Singh, Civil No. WDQ-13-2365, 2014 WL 1347113, at *5 (D. Md. Apr. 3, 2014). Chinta Perdomo Berks & Fratangelo, LLC also utilized an associate, Antoaneta Tarpanova, who charged an hourly rate of $200.[6] (ECF No. 23-1 at ¶¶ 2, 20). Although TWCBH did not provide any information about Ms. Tarpanova's experience, this rate is also presumptively reasonable, as it

---

[4] I note that the Local Rules do not specify whether to include years admitted to a foreign bar prior to admission to a state bar when calculating an attorney's years of experience. Accordingly, if Ms. Perdomo's experience is calculated based on her admission to the New York bar, she would fall within the category of lawyers admitted to the bar for nine (9) to fourteen (14) years, while she would fall within the category of lawyers admitted to the bar for fifteen (15) to nineteen (19) years if her experience is calculated based on her admission to the bar in the Dominican Republic. Here, I recommend calculating Ms. Perdomo's experience based on her admission to the bar in the Dominican Republic, given that her Dominican Republic bar experience is relevant in this case.

[5] Guideline 3 of Appendix B to the Local Rules provides a range of hourly rates between $275 and $425 for lawyers admitted to the bar for fifteen (15) to nineteen (19) years and between $300 and $475 for lawyers admitted to the bar for twenty (20) years or more.

[6] I note that on one instance on May 30, 2018, Ms. Tarpanova charged an hourly rate of $175 instead of $200. (ECF No. 23-2 at 2).

falls within the lowest range of hourly rates contemplated for lawyers under the Local Rules.[7] Freeman & Freeman, P.C., also utilized a "paralegal/associate" who charged an hourly rate of $120. (ECF No. 23-1 at ¶ 15). While TWCBH also did not provide any information about this individual's experience (i.e., whether this individual is a paralegal, law clerk, or associate attorney), this rate is presumptively reasonable, as it falls within the range of hourly rates contemplated for paralegals and law clerks under the Local Rules and falls below the lowest range of hourly rates for lawyers.[8]

Fee applicants must also establish the reasonableness of the hours requested. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Plaintiffs may not recover fees for time that is "excessive, redundant, or otherwise unnecessary." CoStar Grp., Inc v. LoopNet, Inc., 106 F. Supp. 2d 780, 789 (D. Md. 2000). After reviewing the billing records submitted, the court must ensure that counsel has exercised "billing judgment," that is, "winnowing the hours actually expended down to the hours reasonably expended." Id. (citing Hensley, 461 U.S. at 434); see also Gu v. Hughes STX Corp., 127 F. Supp. 2d 751, 765 (D. Md. 2001) (courts should review fee petitions just as a cost-conscious client would, calling into question any entries that appear duplicative, inefficient, or unnecessary).

Ms. Perdomo and Ms. Tarpanova spent 75.89[9] hours on this case for a total of $28,028.25, while Mr. Freeman and his paralegal/associate spent 26.9 hours on this case for a total of $5,995.50.[10] In sum, counsel spent 102.79 hours on this case for a total of $34,023.75.

---

[7] Guideline 3 of Appendix B to the Local Rules provides a range of hourly rates between $150 and $225 for lawyers admitted to the bar for less than five (5) years.
[8] Guideline 3 of Appendix B to the Local Rules provides a range of hourly rates between $95 and $150 for paralegals and law clerks.
[9] While the Declaration states that Ms. Perdomo and Ms. Tarpanova spent 75.57 hours on the case (ECF No. 23-1 at 3), the invoices reflect a total of 75.89 hours (ECF No. 23-2).
[10] While the Declaration states that Mr. Freeman and his paralegal/associate spent 29.5 hours on the case for a total of $5,995.55 (ECF No. 23-1 at 4), the invoices reflect that they spent 29.7 hours on the case but only charged for 26.9 hours of work for a total of $5,995.50. (ECF No. 23-3).

To justify the hours billed in this case, counsel submitted time records and invoices for both firms retained that detailed the individual tasks for which counsel request reimbursement and reveal the number of hours allotted to each task. (ECF Nos. 23-2, 23-3). Based upon my review of these records, I find that, with two exceptions, counsel has exercised "billing judgment," and that the hours expended by the firms were reasonable. I do find, however, that there are two areas where the hours charged by counsel were excessive, redundant, and unnecessary, and recommend that these hours be excluded.

First, I note that, on September 5, 2018, Ms. Perdomo recorded that she spent 4.5 hours drafting and filing plaintiffs' Request for Entry of Default (ECF No. 9) and Status Report (ECF No. 10). (ECF No. 23-2 at 5). Additionally, between September 1 and September 12, 2018, Mr. Freeman and his paralegal/associate recorded that they spent an additional $6^{11}$ hours reviewing and revising these pleadings and corresponding with Ms. Perdomo and Ms. Tarpanova about the filings. (ECF No. 23-3 at 6–7). The Request for Entry of Default, however, merely contains one paragraph of text along with counsel's signature lines and certification of service. (ECF No. 9). Similarly, the Status Report consists of less than one page of text and counsel's signature lines. (ECF No. 10). Accordingly, I find that it was excessive and unnecessary for counsel to spend 10.5 hours working on these pleadings. I recommend that the court allow Ms. Perdomo one hour of work for drafting and filing the pleadings, allow Mr. Freeman one hour of work for reviewing and revising the pleadings, and reduce the amount of attorneys' fees requested by $2,697$^{12}$ for the unnecessary hours billed for these pleadings.

---

[11] This includes all billed time entries between September 1, 2018 and September 12, 2018, except for 0.4 hours spent on September 5 reviewing emails from Ms. Perdomo regarding wire transfers. (ECF No. 23-3 at 6–8).

[12] This includes $1,400 for 3.5 hours billed by Ms. Perdomo at a rate of $400 per hour, $1,105 for 3.4 hours billed by Mr. Freeman at a rate of $325 per hour, and $192 for 1.6 hours billed by Mr. Freeman's paralegal/associate at a rate of $120 per hour. (ECF Nos. 23-2 at 5, 23-3 at 6–7).

Second, Ms. Perdomo and Ms. Tarpanova recorded that they spent 11.67 hours between December 28, 2018 and January 25, 2019 preparing plaintiffs' Supplemental Brief. (ECF No. 23-2 at 6). Additionally, between December 20, 2018 and February 7, 2019, Mr. Freeman and his paralegal/associate recorded that they spent 3.1 hours reviewing the Supplemental Brief and corresponding with Ms. Perdomo and Ms. Tarpanova regarding the brief. (ECF No. 23-3 at 14–16). I find, however, that the total 14.77 hours billed by counsel for their work in preparing this Supplemental Brief was unnecessary and redundant. In plaintiffs' original Motion, counsel relied solely on Maryland law and authority in support of their request for a default judgment, even though the Consulting Agreement expressly stated that the laws of the Dominican Republic governed the agreement. (ECF No. 1-2 at 4). Accordingly, I asked counsel to provide relevant authority from the Dominican Republic or otherwise provide case law as to why the laws of the Dominican Republic did not govern the agreement. (ECF No. 18). In their Supplemental Brief, counsel did not dispute that the laws of the Dominican Republic governed the agreement and provided relevant authority. (ECF No. 19 at 4–6). Additionally, I asked counsel to provide additional authority in support of their requests for punitive damages and attorneys' fees and costs, as such information was not included in their original Motion. (ECF No. 18). In sum, all information provided in the Supplemental Brief should have been provided in plaintiffs' original Motion, and the hours spent preparing the Supplemental Brief were unnecessary and redundant. Accordingly, I recommend that the court reduce the amount of attorneys' fees requested by $4,342.50[13] for the unnecessary hours spent on the Supplemental Brief.

---

[13] This includes $3,068 for 7.67 hours billed by Ms. Perdomo at a rate of $400 per hour, $800 for 4 hours billed by Ms. Tarpanova at a rate of $200 per hour, $162.50 for 0.5 hours billed by Mr. Freeman at a rate of $325 per hour, and $312 for 2.6 hours billed by Mr. Freeman's paralegal/associate at a rate of $120 per hour. (ECF Nos. 23-2 at 6–7, 23-3 at 6–7).

In total, I recommend that the court reduce the amount of attorneys' fees requested by $7,039.50 and award counsel $26,984.25 in attorneys' fees. This reduction also places the award of attorneys' fees closer to the amounts granted by this court for default judgments based on a breach of a contract. See, e.g., Bay State Precast, Inc. v. Royal Tractor Co., Inc., Civil No. DKC-13-3371, 2014 WL 7014468, at * (D. Md. Dec. 10, 2014) (awarding $13,200 in attorneys' fees for 33 hours of work); Cirrus DX, Inc., v. Corridor Med. Servs., Inc., Civil No. PX-18-2701, 2019 WL 556863, at *3 (D. Md. Feb. 12, 2019) (granting $11,423.00 in attorneys' fees for 30.4 hours of work). While the amount recommended here still exceeds the amount awarded in other cases, this case included additional hurdles that are not typically present in a straightforward breach of contract case, such as properly serving defendants in the Dominican Republic. (ECF No. 23-1 at 3). Accordingly, I find that a total of $26,984.25 in attorneys' fees is reasonable and well-documented in the records provided by counsel. (ECF Nos. 23-2, 23-3).

Finally, TWCBH requests reimbursement of $5,319.55 in costs. (ECF No. 23 at 2). Specifically, TWCBH requests reimbursement of $500 in filing fees for the Complaint and Motion for Admission Pro Hac Vice, $38.60 in photocopying costs, $89.95 in Westlaw research costs, $2,891 in translation costs, and $1,800 in foreign attorney's expert affidavit fees. I find that these costs are reasonable and documented in the record. (ECF Nos. 23-3–23-5). See also Schedule of Fees, http://www.mdd.uscourts.gov/publications/Forms/ScheduleofFees.pdf (January 1, 2019) (cost of filing a civil action in this court is $400.00 and cost of filing a pro hac vice motion is $100.00). Accordingly, I recommend granting TWCBH's request for $5,319.55 in costs.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that:

1. The Court GRANT plaintiffs' Motion for Default Judgment (ECF No. 12) as to plaintiff TWCBH on its breach of contract claim only and DENY plaintiffs' Motion as to all other claims;

2. The Court award TWCBH **$100,000.00** in compensatory damages;

3. The Court award TWCBH **$100,000** in liquidated damages;

4. The Court award TWCBH **$32,303.80** in attorney's fees and costs;

The Court ENTER default judgment jointly and severally against defendants Born to Play Agency, EIRL, and Edgar Robinson Mercedes in the amount of **$232,303.80.**

I also direct the Clerk to mail a copy of this Report and Recommendation to defendants at the addresses listed on plaintiffs' Complaint. (ECF No. 1).

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date: April __25__, 2019                              /s/
                                                      Beth P. Gesner
                                                      Chief United States Magistrate Judge